IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

STEPHEN REGULSKI,                    )
                                     )
                    Plaintiff,       )
                                     )          Civil Action No. 25-67
            v.                       )
                                     )
FRANK BISIGNANO,[1]                  )
COMMISSIONER OF SOCIAL SECURITY,     )
                                     )
                    Defendant,       )


MEMORANDUM OPINION

## I.    INTRODUCTION

Pending before the court is an appeal from the final decision of the Commissioner of

Social Security ("Commissioner" or "defendant") denying the claims of Stephen Regulski

("plaintiff") for disability insurance benefits ("DIB") under Title II and for supplemental security

income ("SSI") under Title XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 405(g),

1383(c)(3).  Plaintiff contends the Appeals Council erred in failing to consider medical evidence

that was submitted on appeal following the decision of the Administrative Law Judge ("ALJ"),

and the ALJ erred a) in the analysis of plaintiff's mental health limitations; b) in assessing

plaintiff's physical limitations; and c) in determining the residual functional capacity ("RFC")

posed to the vocational expert ("VE") in a hypothetical, which thereby caused the ALJ to reach

an incorrect conclusion about the impact of plaintiff's limitations relative to his ability to

perform gainful employment.  Plaintiff asserts that the ALJ's decision is not supported by

---

1.  Frank Bisignano became the Commissioner of Social on May 7, 2025 and is automatically substituted for then-Acting Commissioner Leland Dudek as a party in this case pursuant to Fed. R. Civ. P. 25(d). No further action is required due to the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

substantial evidence and should be reversed or remanded for the Commissioner to consider properly all the evidence of record, including all plaintiff's severe mental health limitations. The Commissioner asserts that the ALJ's decision is supported by substantial evidence and the Commissioner's decision should be affirmed.

Plaintiff filed a motion and brief in support of the motion for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. (ECF Nos. 5, 6.) The Commissioner filed a brief in opposition to plaintiff's motion. (ECF No. 7.) Plaintiff filed a reply reasserting the issues in the primary brief and responding to certain of the Commissioner's arguments. (ECF No. 18.) The court will deny plaintiff's motion for summary judgment (ECF No. 5) for the reasons set forth below.

## II.     PROCEDURAL HISTORY

On July 14, 2022, plaintiff protectively filed a Title II application for DIB and a Title XVI application for SSI with a disability onset date alleged to begin on May 6, 2022. (R. at 260, 300, 339.) The claims were initially denied on September 29, 2022, and again upon reconsideration on April 20, 2023. (R. at 260, 417-26, 434-440.) On April 28, 2023, plaintiff requested a hearing before an administrative law judge. (R. at 260, 442.) Plaintiff agreed to appear by telephone and testified at a hearing before the ALJ on December 12, 2023. (R. at 337-374.) On January 23, 2024, an additional hearing was held where plaintiff, again, appeared by telephone and testified. (R. at 297-335.) Although the transcript of the second hearing indicates that the audio recording from the first hearing "failed" and necessitated the second hearing, transcripts for both hearings are contained in the record without explanatory comment. (R. at

260, 299.)  Plaintiff was represented by an attorney at both hearings. (<u>Id.</u>)  An impartial VE testified by phone at each hearing. (<u>Id.</u>)

In a decision dated April 10, 2024, the ALJ determined that plaintiff was not disabled within the meaning of the SSA under § 1614(a)(3)(A) and was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (R. at 273-274.)  Plaintiff timely requested a review of that determination and by letter dated January 21, 2025, the Appeals Council denied the request for review.  The decision of the ALJ became the final decision of the Commissioner. (R. at 1-6.)  Plaintiff subsequently commenced the present action seeking judicial review and requesting the court reverse the decision of the Commissioner and grant plaintiff benefits or remand the case for further proceedings.


III.    **LEGAL STANDARD OF REVIEW**

Judicial review of the Commissioner's final decision denying a claimant's application for benefits is provided by federal law. 42 U.S.C. § 405(g).  The judicial review of a final decision is plenary with respect to questions of law. <u>Schaudeck v. Comm'r Soc. Sec.</u>, 181 F.3d 429, 431 (3d Cir. 1999).  With respect to factual findings, this court must determine whether there is substantial evidence which supports the findings of the Commissioner.  "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate.'" <u>Ventura v. Shalala</u>, 55 F.3d 900, 901 (3d Cir. 1995) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389 (1971)).  The deferential standard has been referred to as "less than a preponderance of evidence but more than a scintilla." <u>Burns v. Burhart</u>, 312 F.3d 113, 118 (3d Cir. 2002).

3

This standard, however, does not permit the court to substitute its own conclusion for that of the fact-finder. Id.; Fargnoli v. Massonari, 247 F.3d 34, 38 (3d Cir. 2001) (reviewing whether the administrative law judge's findings "are supported by substantial evidence" regardless whether the court would have differently decided the factual inquiry).  The court will not affirm a determination by substituting what it considers to be a proper basis even if it might have reached a different conclusion. Sec. & Exch. Comm'n v. Chenery Corp., 332 U.S. 194, 196-97 (1947).  The Third Circuit Court of Appeals had held that an administrative law judge has a legitimate basis to discredit a medical opinion when there are inconsistencies and contradictory evidence in the record. See Hubert v. Comm'r of Soc. Sec., 746 F. App'x 151, 153 (3d Cir. 2018).  "The reviewing court, however, does have a duty to review the evidence in its totality." Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (citing Daring v. Heckler, 727 F.2d 64, 70 (3d Cir.1984)).

## IV.    PLAINTIFF'S BACKGROUND AND MEDICAL EVIDENCE

### A.    Plaintiff

Plaintiff was born on March 27, 1976 and was 46 years old at the time of his claimed onset of disability in 2022. (R. at 272; Pl.'s Br., ECF. No. 6 at 2.)  He is a high school graduate and earned an associate degree in electrical engineering. (R. at 272, 303, 344.)  Plaintiff lives with his uncle, has a license to drive a car, and does his own grocery shopping, cooking, and laundry. (R. at 264, 311-313, 352-353, 358.)  Plaintiff's medication list includes: amlodipine, omeprazole, sertraline, amitriptyline, quetiapine fumarate, atorvastatin, metformin, metoprolol, fenofibrate, dicyclomine, Xanax, fish oil, famotidine and hydroxyzine. (R. at 630-631.)  Plaintiff

worked in electrical engineering positions of increasing responsibility in food service equipment companies. (R. at 304-310.)  Plaintiff's last job, in 2020, was with a food service equipment company as a project manager where he ran food factories across Europe and North America. (R. at 309-310.)  In July 2020 plaintiff was jailed before being released on bail, and was reincarcerated on subsequent charges from July 2021 to May 2022. (R. at 791, 972-973.)  During the hearings, the ALJ heard testimony from plaintiff regarding his physical and mental health limitations. (R. at 311-326, 351-365.)

### B.    Medical Record

#### 1.    Physical Impairments – Doctors Zeliger and Varacallo

Plaintiff's function report of his "illnesses, injuries, or conditions" listed "pain in shoulders" and "limited range of motion" as the primary physical complaint in his application for benefits. (R. at 577.)  Beginning in June 2022, following plaintiff's release from incarceration, plaintiff complained at medical appointments of pain in both shoulders for the past year. (R. at 827-828.)  He noted a prior surgery in the left shoulder following a motor vehicle accident, but reported no known injury to the right shoulder. (Id.)  Plaintiff was followed by Keith Zeliger, D.O., at Penn Highlands Orthopaedics, who ordered x-rays and an MRI of plaintiff's shoulders. On July 28, 2022, upon review of the images and examination, Dr. Zeliger noted plaintiff had "full active and passive range of motion but pain on flexion" and "some degenerative change and some mild osteoarthritis." (R. at 844-845.)  He found plaintiff's left shoulder appeared normal, and there was no evidence of "rotator cuff pathology but [plaintiff] does have evidence of a SLAP lesion" on the right shoulder. (R. at 845.)  Plaintiff was told to think about the recommended surgery "or whether he can live with it." (Id.)  On January 31, 2023, Dr. Zeliger

noted plaintiff "having failed to respond, thus far, to conservative management we will limit his

activities working with no lifting carrying pushing pulling above chest level until further notice."

(R. at 1472.)  On April 27, 2023, plaintiff discussed the joint impingement in his shoulder with

Dr. Zeliger again, but "wishes to hold off surgery until the fall." (R. at 1475.)  Dr. Zeliger

documented:

> At this point I believe he could work light duty sitting sedentary work until
> further notice. He would not have restrictions on his left arm he could use his
> right arm without lifting anything greater than a pound up to 90 degrees but not
> use or function above shoulder level.

(Id.)

On June 6, 2023, plaintiff, after a fall, requested evaluation for lower back pain and pain

radiating to the left posterior hip. (R. at 1480.)  Christopher Varacallo, D.O., evaluated a CT scan

of plaintiff's lumbar spine, which showed a "small left paramedian disc protrusion." (R. at 1482.)

Plaintiff was referred to physical therapy and was restricted from work until his next

appointment, scheduled for six to eight weeks later. (R. at 1464.)  On October 4, 2023, Matthew

Varacallo, D.O., continued plaintiff's no-work order "until further evaluation." (R. at 1736.)  On

October 26, 2023, plaintiff was again evaluated by Dr. Christopher Varacallo to follow up on

plaintiff's lower back pain and discuss continued left shoulder pain. (R. at 1781-1784.)  Dr.

Varacallo treated plaintiff's lower back pain with a SI-joint epidural injection. (R. at 1784.)

Imaging of the left shoulder revealed "no acute osseous abnormalities or significant degenerative

changes." (Id.)  After discussion, plaintiff and his doctor decided on "peripheral nerve

stimulator" to treat the shoulder pain. (Id.)

### 2.    Mental Health Impairments – Dickinson Center, Various Providers

Plaintiff has been seen for mental health issues since at least November 2019. (R. at 1742.)  His symptoms of general anxiety and possible depression showed good response to treatment with Zoloft. (Id.)  During incarceration, plaintiff requested "something more for sleep" to address his anxiety. (R. at 692-693.)  On May 26, 2022, just after his release, plaintiff presented for a nurse visit requesting medication to address his stress, anxiousness, and depression. (R. at 928.)  He reported difficulty "transitioning from jail to back into society" and agreed to blended case management support. (R. at 935.)  Plaintiff acknowledged his "stress and anxiety level are 'pegged' to the top" because he "lost everything" financially and had ongoing custody and financial challenges. (R. at 939-940.)

Throughout plaintiff's mental health appointments in 2022, he was recorded as "focused and attentive," (R. at 960), and demonstrated good attention and concentration. (R. at 1008.)  On October 10, 2023, plaintiff was administered a battery of neurobehavioral status examinations. (R. at 1749.)  He scored in the low range for several cognition tests and was recommended to continue medications to treat a vitamin D deficiency, anxiety and depression.  He was to improve physical exercise, nutrition, hydration, and sleep hygiene habits. (R. at 1750-1752.)  By November 2022, plaintiff was continuing "to use his medication to relax but has been trying to fill his time with more hobbies and activities." (R. at 1767.)  By November 2023, plaintiff stull struggled with anxiety, "but continues to use his coping skills learned in Therapy." (Id.)

### 3.     State Agency Medical Consultants' Review

Plaintiff's medical record file was reviewed by state agency medical consultants for independent disability determination analysis and RFC to work. (R. at 375-416.)  Hong Sik Park, M.D., on September 29, 2022, noted findings about plaintiff's medical conditions, and mental

health professional, Faisal Roberts, Psy.D., provided a psychiatric review on September 15, 2022. (R. at 380, 382.)  On reconsideration, Nancy Kennedy, Psy.D., on March 24, 2023, assessed plaintiff's mental health record, (R. at 398), and Chan Kun Chung, M.D., on April 20, 2023, signed the report for "Adult Overall Medical Disposition." (R. at 394, 415.)  In the part of each report with respect to "Mental Limitation," assessing the four paragraph "B" domains of 1) understand, remember, or apply information; 2) interact with others; 3) concentrate, persist, or maintain pace; and 4) adapt or manage oneself, only domain 3 was assessed as a "moderate" limitation, with the others found to be mild. (R. at 379, 388, 398, 409.)  In the "Mental Residual Functional Capability" part, it was noted that of the eight subsets for paragraph B, domain 3, plaintiff was "not significantly limited" for six areas, but "moderately limited" in the areas of "ability to carry out detailed instructions" and "ability to maintain attention and concentration for extended periods." (R. at 383, 392, 402, 413.)

They each considered the Adult Function Report prepared by plaintiff with the assistance of his blended case manager, Nicole Cashmer, and found the "evidence of record … to be partially consistent with [plaintiff's] statements." (Id.)  Each reviewer noted the activities of daily living that plaintiff was capable of continuing, and each overall medical disposition, for both the initial determination and upon reconsideration and recommended a finding of "not disabled" with "postural and manipulative limitations;" no reviewer recommended mental health considerations impacting plaintiff's RFC. (R. at 384, 393, 403, 414.)

### 4.    Post ALJ Decision Medical Source Submissions

After the ALJ's decision, plaintiff submitted additional medical evidence directly to the Appeals Counsel.  Plaintiff provided the comprehensive intake assessment visit notes from when

he established a new primary care provider at Caring Healthcare on February 22, 2024, with follow-up on February 26, 2024. (R. at 126-137.) He submitted additional primary care notes from appointments with various providers at Caring Healthcare from March to June 2024. (R. at 138-233.) On March 7, 2024, at an appointment with Certified Physician's Assistant Natalia McCliment, ("PAC McCliment"), PAC McCliment noted an adjustment to plaintiff's medications in response to continuing pain. (R. at 139-140.) PAC McCliment provided plaintiff a "Physician Verification Form" dated May 30, 2024, that listed plaintiff's injury as "schizoaffective disorder depressed type, generalized anxiety disorder, irritability & anger," and stated plaintiff "is not able to return to work" with no amplifying remarks. (R. at 234.) On July 15, 2024, PAC McCliment provided plaintiff with a "Mental Impairment Questionnaire." (R. at 92-97.) In checkboxes for "functional limitation" on the questionnaire, PAC McCliment checked "marked" for plaintiff's limitations in the "Understand, remember or apply information" and the "Concentrate, resist or maintain pace" domain entries. (R. at 93-94.)

In December 2023, plaintiff's blended case manager at CenClear changed from Nicole Cashmer to Eric Miller. (R. at 91.) On July 19, 2024, Mr. Miller submitted a letter for the record stating that "in the months [Miller] ha[s] worked with [plaintiff] he has had a marked loss of cognitive ability in grasping concepts and retaining information." (Id.) Other comprehensive cumulative mental health case notes from plaintiff's April 18, 2024 appointment at CenClear were also submitted to the Appeals Council. (R. at 243-256.) Expanding on plaintiff's mental health impairments, plaintiff submitted a "Mental Impairment Questionnaire" completed by Dr. Dennis Dombrowski and dated September 12, 2024. (R. at 84-89.) Dr. Dombrowski opined plaintiff had "marked" limitations in "Understand, remember or apply information" and "Interact

with others," as well as, "extreme" limitations in the "Concentrate, resist or maintain pace" and "Adapt or manage oneself" domains. (R. at 85-86.)

Related to his physical impairments, plaintiff submitted additional visit notes from Penn Highlands Orthopaedics, documenting visits on December 4, 2023, (R. at 283-287), December 13, 2023, (R. at 98-99), January 18, 2024, (R. at 288-292), February 19, 2024, (R. at 100-101), March 19, 2024, (R. at 106-109, 293-296), March 27, 2024, (R. at 102-103, 110-112), May 23, 2024, (R. at 113-120), June 24, 2024 (R. at 104-105, 122-124), for treatments related to the continuing conditions in his shoulders and lower back.  The visit note from plaintiff's June 24, 2024 orthopedic appointment indicated plaintiff "denies anxiety, panic attacks, depression [and] hallucinations." (R. at 107, 116.)  Plaintiff also provided the Appeals Council with a copy of the "Physician Verification Form" dated May 30, 2024, in which plaintiff's orthopedist reported to the Court of Common Pleas for Elk-Cameron County that "[plaintiff] is unable to work due to current medical condition,". (R. at 235.)  Plaintiff submitted another "off work until further notice" opinion, dated September 25, 2024, signed by PAC Miksich at Penn Highlands Orthopaedics, which contained no amplifying remarks. (R. at 83.)


V.    DISCUSSION

A.    ALJ's Findings

Proceeding through the sequential evaluation process, the ALJ determined that plaintiff had not engaged in substantial activity since his application for benefits at step one, (R. at 262), acknowledged plaintiff had severe impairments of "degenerative joint disease of the right shoulder; degenerative disc disease of the lumbar spine; cervical radiculopathy; obesity; tongue

ulcer; anxiety disorder; adjustment disorder; depressive disorder; and anti-social personality

disorder" at step two, (R. at 263), and found that plaintiff's combination of impairments did not

meet the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1

at step three. (<u>Id.</u>)

Prior to commencing step four, the ALJ determined plaintiff's RFC.  The ALJ considered

plaintiff's entire medical record, which was before the ALJ, including the medical opinions and

state administrative medical reviewers' reports discussed above, and determined plaintiff's RFC

as follows:

> [plaintiff] has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). He can never crawl, or climb ladders, ropes, or scaffolds, as those are defined in the DOT/SCO. He can occasionally balance, crouch, kneel, stoop, or climb ramps/stairs, as those are defined in the DOT/SCO. He can occasionally reach overhead with the right upper extremity. He can have exposure to no more than moderate noise as defined in the DOT/SCO. He can have occasional exposure to non-weather temperature extremes of cold, vibration, or atmospheric conditions, as those are defined in the DOT/SCO. He can have no exposure to hazards, as those are defined in the DOT/SCO. He can understand, remember, and carry out simple instructions. He can have occasional interactions with supervisors, coworkers, and/or the public. He cannot perform work requiring a specific production rate such as assembly line work or work that requires hourly quotas, and he can deal with occasional changes in a routine work setting.

(R. at 265.)

At step four, for purposes of assessing prior work, the ALJ utilized plaintiff's prior work

as a maintenance manager, maintenance mechanic, electrician, and composite jobs of substation

electrician and substation supervisor. (R. at 272.)  During the hearing, the ALJ heard testimony

from plaintiff and acknowledged that prior work performed by plaintiff at the skilled heavy and

up to very heavy level would no longer be available given his physical and mental limitations.

(<u>Id.</u>)

With respect to the findings at step five, the ALJ posited a series of hypothetical questions to the VE to determine whether there was other work plaintiff was capable of performing given his physical and mental limitations. (R. at 330-331.) Utilizing plaintiff's data as a younger individual, with at least a high school degree, substantial vocational history, and based on his earlier testimony at the hearing, the VE opined plaintiff's prior work was skilled, often heavy as performed. (R. at 329.) The VE, taking into account the limitations described for a hypothetical individual with limitations like plaintiff's limitations, opined that "none of the past work would meet the conditions of that hypothetical," but there would be other "occupations such a hypothetically limited individual could perform." (R. at 331.) Because the ALJ determined at step five that there were "jobs that exist in significant numbers in the national economy that [plaintiff] can perform," the ALJ concluded that plaintiff was not disabled. (R. at 272.)

### B.    Alleged Errors

#### 1.    Four Errors

Plaintiff alleges the Appeals Council erred when it failed to consider additional medical evidence that would show the ALJ's decision was not supported by substantial evidence and warrants reversal of the decision of the Commissioner and the award of benefits to plaintiff. (Pl.'s Br. ECF No. 6 at 13, 20.) Plaintiff argues that the ALJ's decision was not supported by substantial evidence. Specifically, he argues that the ALJ erred because a) the ALJ failed in the assessment of plaintiff's mental health impairments, finding that they did not "meet or medically equal a listed impairment," but resulted in moderate limitations; b) the ALJ failed to account properly for the pain plaintiff's physical impairments cause and account for that in the RFC

presented to the VE in hypotheticals; and c) the RFC that was presented to the VE in hypotheticals did not convey all plaintiff's functional limitations and the impact they would have on time off task. (Id. at 14-19.)  Each alleged error will be addressed.

### 2.     Alleged Error by the Appeals Council in Failing to Consider Plaintiff's Medical Evidence Submitted on Appeal

Plaintiff alleges remand is required because the "Appeals Council has the power to review a case where it 'receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision.'"  (Id. at 13) (quoting 20 C.F.R. § 404.970.)  Plaintiff acknowledges additional mental health questionnaires and treatment notes referencing his physical limitations that he submitted to the Appeals Council were not available to the ALJ in his decision making.  (Id. at 13-14.) This material was submitted directly to the Appeals Council. (Id.)

#### a.   Sentence Four Review

In Matthews v. Apfel, 239 F.3d 589 (3d Cir. 2001), a case of first impression, the Third Circuit Court of Appeals questioned whether

> the claimant must demonstrate good cause for failure to present to the ALJ new and material evidence presented for the first time to the Appeals Council which, after consideration, denies the review.

Matthews, 239 F.3d at 591.  The Court in Matthews explained that

> although evidence considered by the Appeals Council is part of the administrative record on appeal, *it cannot be considered by the District Court* in making its substantial evidence review once the Appeals Council has denied review.

Id. at 593 (emphasis added).  After a review of the Social Security Act, the court of appeals found:

> The Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, *if supported by substantial evidence*, shall be conclusive." 42 U.S.C. § 405(g) (emphasis added). Sentence Four of § 405(g) provides that "[t]he court shall have power to enter, *upon the pleadings and transcript of the record*, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Id. (emphasis added).

Id. at 592 (quoting 42 U.S.C. § 405(g)) (emphasis added in original).

The language of the SSA directs the standards of judicial review for benefits appeals claims.  In Matthews, the court of appeals reiterated that "evidence that was not before the ALJ cannot be used to argue that the ALJ's decision was not supported by substantial evidence." Id. at 594.  In Matthews, the court of appeals addressed the conflict that could occur between the courts and the language of the SSA regulation. Id.  The courts have no statutory authority to review "the Appeals Council decision to deny review" of an administrative law judge's decision. Id.  The district court has no authority to make a decision on substantial evidence for material that was not presented to the ALJ.  Based on Sentence Four of the SSA, this court has no authority to remand plaintiff's case based on any evidence submitted after the ALJ's decision, taking no position of the substantiality of that evidence.  See id. at 593 ("[W]hen the Appeals Council has denied review the district court may affirm, modify, or reverse the Commissioner's decision, with or without a remand based on the record that was made before the ALJ (Sentence Four review).").

**b.  Sentence Six Review**

A district court has the authority to remand a case to the Commissioner, under Sentence Six of the SSA, for the Commissioner to consider whether additional information provided in the record that was not before the administrative law judge is substantial evidence, but only when "the claimant has shown good cause why such new and material evidence was not presented to the ALJ." Id. at 592.  The Third Circuit Court of Appeals held

> If the claimant proffers evidence in the district court that was not previously presented to the ALJ, then the district court may remand to the Commissioner but that disposition is governed by Sentence Six of § 405(g).  That sentence provides,
>
>> The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and *it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding*; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based.

Id. at 592 (quoting 42 U.S.C. § 405(g)) (emphasis added in original).

A sentence six remand

> does not "rule in any way as to the correctness of the administrative determination. Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding."

Miller v. Comm'r Soc. Sec., 732 F. App'x 162, 165 (3d Cir. 2018) (quoting Melkonyan v. Sullivan, 501 U.S. 89, 98, 111 (1991)).

Plaintiff did not specifically raise the possibility of this district court considering a Sentence Six review.  In fact, in the conclusion of plaintiff's brief in support of his motion for summary judgment, plaintiff asks this court to "reverse the decision and grant benefits on his application…." (Pl.'s Br., ECF. No. 6 at 20.)  The court could stop its analysis at this point.  See United States v. Dowdell, 70 F.4th 134, 139 (3d Cir. 2023) (affirming the district court's finding that an "argument had never been made, so it was waived").   Assuming plaintiff did not intend to waive the argument for a Sentence Six remand, the court will analyze whether the evidence submitted to the Appeals Council was new and material and if plaintiff had good cause for its late submission.

### i.  New Evidence

 "New evidence" must "not merely [be] cumulative of what is already in the record." Szubak v. Sec'y of Health & Hum. Servs., 745 F.2d 831, 833 (3d Cir. 1984).  Another district court observed, "at times the Third Circuit has allowed 'corroborating' evidence to constitute new evidence, (id. at 834), while at other times holding that 'clarifying' evidence does not." Shuter v. Astrue, 537 F. Supp. 2d 752, 757 (E.D. Pa. 2008) (citing Fouch v. Barnhart, 80 F. App'x. 181, 187 (3d Cir.2003) (non-precedential)).  For purposes of this analysis, the court will consider the additional evidence submitted by plaintiff to be "new."

### ii.  Material Evidence

Materiality is determined when there is

> a reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination [and …] the new evidence relate[s] to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition.

16

<u>Szubak</u>, 745 F.2d at 833.  Here, the medical records and medical source statements plaintiff submitted to the Appeals Council all referenced conditions that he had alleged in the record, but plaintiff argues he only started treatment with those medical sources shortly before his hearing with the ALJ.

The Appeals Council, in its letter of January 21, 2025, articulated its rationale for denying plaintiff's request for review of the ALJ's decision based on the additional information that was submitted to it. (R. at 1-4.)  The Appeals Counsel reviewed and considered each additional record submitted by plaintiff and concluded that some of plaintiff's records, specifically those related to mental health and those from orthopedic appointments before the end of June 2024, did "not show a reasonable probability that [they] would change the outcome of the decision." (R. at 2.)  In other words, the submissions were not material.  The record supports that conclusion. It is noteworthy that plaintiff, as reflected in the additional orthopedic notes from an appointment on June 24, 2024, "denies anxiety, panic attacks, depression, hallucinations." (R. at 107, 116.)  Other of those additional records reflected a deterioration of his condition over the period December 2023 through July 2024, e.g., Mr. Miller, in a letter dated July 19, 2024, noted "in the months [starting in December 2023] I have worked with [plaintiff] he has had a marked loss of cognitive ability…." (R. at 91), but the court cannot determine how much of that decline occurred in the period before the ALJ's opinion in April 2024.  The Appeals Council did not consider these submissions sufficient to show a probability that the outcome would have been different, i.e., they did not outweigh the persuasiveness of the accounts of plaintiff's daily activities and the opinions of the state agency consultants.

The Appeals Council concluded that the other records, i.e., the mental health opinion of PAC McCliment from July 2024, the orthopedic appointment records from July to December 2024, and plaintiff's medication list from September 2024, did not "relate to the period at issue. Therefore, they did not affect the decision about whether [plaintiff] was disabled beginning on or before April 10, 2024." (R. at 2.)  The record supports that conclusion, e.g., PAC McCliment's July 2024 opinion referred to plaintiff's "current symptoms," rather the claimed disability period. (R. at 96.)  The Appeals Counsel suggested plaintiff could reapply for benefits for the period after April 10, 2024, with this new information. (R. at 2.)

The record supports the Appeals Council's conclusions about materiality and this court likewise determines the "new" additional submissions are not material.

### iii.  Good Cause

Even if the additional evidence was new and material, the court still would need to address whether plaintiff showed good cause why it was not submitted to the ALJ. Szubak, 745 F.2d at 833.  One court has explained:

> Good cause must also be shown for failing to submit additional evidence during the administrative proceeding. Matthews v. Apfel, 239 F.3d 589, 594 (3d Cir.2001). The rationale behind the good cause requirement is to prevent an "end-run method of appealing an adverse ruling from the Secretary." Szubak, 745 F.2d at 834 (holding that the requirement prevents claimants from having more than one bite at the apple). The good cause requirement protects the integrity of the system.
>
> Some courts have defined good cause as requiring a claimant to show "some justification" for failing to submit the evidence. Szubak, 745 F.2d at 834; Cunningham v. Apfel, 2001 WL 892796, *7–8, 2001 U.S. Dist. LEXIS 11269, *25 (E.D.Pa. Aug. 2, 2001). Others have referred to good cause as having "good reason" for failing to submit the evidence to the ALJ in the first place. Matthews, 239 F.3d at 595. The burden of demonstrating good cause rests with the plaintiff. Id.

Shuter, 537 F. Supp. 2d at 758.

The ALJ, at the hearing when plaintiff's attorney remarked that he was "still waiting on University Ortho" to submit records, stated:

> My standard practice is to leave the record open for 14 days. If that is insufficient, I just need to know where we are, okay? You have probably reserved the right to track those records down, but if you are not able to get them inside of a couple of weeks, please just let me know where we are.

(R. at 302.)  The ALJ continued,

> so, at this point we have a complete hearing … but as soon as we get those orthopedic records in, which I'm sure your counselor will get to me -- then we will be able to have a complete record and I will consider everything that is in your fil [sic] and render a written decision.

(R. at 334-335.)  While plaintiff did submit those orthopedic records, he also could have requested additional time to submit records from his new medical providers.  Plaintiff had the opportunity to expand the record and submit additional medical evidence after the hearing, and he submitted the orthopedic records.  Plaintiff had started treatment with new medical providers prior to the hearing before the ALJ, but he did not request the opportunity to obtain records from those providers. See Miller, 732 F. App'x at 166 (Good cause not shown when treatment record prepared shortly after the hearing could have been submitted to the administrative law judge if the claimant had asked to keep the record open until after an anticipated appointment with a medical source.).

As noted, the "[c]laimant had the burden of showing good cause." Matthews, 239 F.3d at 595.  The court finds it cannot conclude that good cause was shown by plaintiff because he knew he had new medical sources, but did not ask to keep the record open to submit materials from those sources.  While plaintiff asserts that the additional submissions relate to the period of disability claimed and that he did not have that evidence at the time of the last hearing, even if

19

good cause were shown, the additional evidence, as discussed above, was not material and a remand is not warranted.

Because the additional evidence was not material, as well as good cause not being proven, the court must address the other alleged errors based only on the record before the ALJ. See Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 360 (3d Cir. 2011) ("Remand cannot be justified based on the ALJ's failure to consider those [new] documents.").

### 3.    Alleged Error by the ALJ in Not Finding Plaintiff's Mental Health Limitations Meet or Medically Equal a Listing

Plaintiff contends that the ALJ erred in not finding plaintiff's mental limitations meet a listing. (Pl.'s Br., ECF. No. 6 at 14.)  Plaintiff cites to his ongoing stress and anxiety, as well as a diagnosis for major depressive disorder, for which he was medicated and had monthly therapy. (Id. at 6.)  To meet the criteria for a mental disorder listing, plaintiff must meet all the criteria specified under Parts A and B (or Parts A and C in limited cases). See 20 C.F.R. Part 404, Subpart P, App. 1 §§ 12.04, 12.06, 12.08.  Part A contains qualifying symptoms for each listed disorder.  To satisfy Part B, or "paragraph B," mental impairments must result in an extreme level of limitation in one or a marked level of limitation in two of the four areas of mental functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and, adapting or managing oneself.  (R. at 264.) It is plaintiff's burden "to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." Sullivan

v. Zebley, 493 U.S. 521, 531 (1990) (emphasis in original); See Ficca v. Astrue, 901 F. Supp. 2d 533, 543 (M.D. Pa. 2012).

In his opinion, the ALJ noted: "In this case, there is no evidence to support a finding of listing level severity, and there is no medical expert opinion to support a finding of medical equivalence." (R. at 264.)  With no traditional medical source statement in the record where plaintiff's mental health was analyzed relative to the four "paragraph B" domains, the ALJ had to make determinations on those categories from the treatment notes and the totality of plaintiff's medical record.  With respect to plaintiff's alleged mental health issues of depression and anxiety, the ALJ noted that plaintiff received treatment at the Dickenson Center for major depressive disorder. (R. at 268.)  Plaintiff was struggling with the transition from jail back to society and facing severe stress from financial and family relations, yet his thought process was noted as "organized, clear, logical, coherent." (R. at 929.)

The Third Circuit Court of Appeals has held that "the Commissioner can rely on evidence other than vocational expert testimony to establish that a claimant's nonexertional limitation does not diminish residual functional capacity." Sykes v. Apfel, 228 F.3d 259, 274 (3d Cir. 2000). Plaintiff's record was reviewed by state agency mental health consultants for a disability determination. (R. at 269-270.)   Both in the initial determination, and on reconsideration, the state agency mental health consultants determined plaintiff had a "moderate" limitation in the domain of "concentrate, persist, or maintain pace," and "mild" limitations in the other three domains. (R. at 379, 388, 398, 409.)  The state mental health examiners opined that plaintiff had no mental health limitation that would prevent plaintiff from working in a light exertional job. (R. at 384, 393, 403, 414.)  The ALJ found the state agency mental health consultants' opinions

to be persuasive, "except for the limitation of 1-2 step tasks," and consistent with mental status findings in treatment notes during other medical providers' examinations. (R. at 270.)  The ALJ, however, in his opinion found plaintiff's limitations in all four paragraph B areas were "moderate," increasing the level of limitation from what the state agency mental health consultants opined in their disability determinations. (R. at 264.)  The ALJ did not mention any different mental health findings from a medical source because there were none in the record before the ALJ. (Id.)

The Third Circuit Court of Appeals has noted that when an "ALJ did not merely rubber stamp [a medical source] RFC conclusion" then it can be considered to have been "properly considered by the ALJ." Chandler, 667 F.3d at 361-62.  Here, the ALJ considered the opinions of the state agency mental health consultants and plaintiff's medical record as a whole.  The ALJ determined plaintiff had moderate limitations in all four paragraph B domains, which were greater limitations in these domains than what the state agency reviewers had determined, but not enough to qualify for a listing-level impairment.  There is substantial evidence to support the ALJ's determination.

### 4.    Alleged Error by the ALJ in Failing to Adequately Consider Plaintiff's Pain from His Physical Limitations in the RFC

Plaintiff asserts that the ALJ did not properly analyze the pain his impairments cause him when determining his RFC.  In Hartranft v. Apfel, 181 F.3d 358 (3d Cir. 1999), the court of appeals recognized:

> Allegations of pain and other subjective symptoms must be supported by objective medical evidence. See 20 C.F.R. § 404.1529. Once an ALJ concludes that a medical impairment that could reasonably cause the alleged symptoms exists, he or she must evaluate the intensity and persistence of the pain or

22

symptom, and the extent to which it affects the individual's ability to work. This obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it. See 20 C.F.R. § 404.1529(c).

Hartranft, 181 F.3d at 362.

Plaintiff states that his "consistent and enduring complaints to his providers" should be reason enough to accept his assertion that he was disabled from work. (Pl.'s Br. ECF No. 6 at 17.) The ALJ acknowledged plaintiff's reported pain and addressed it in his decision. The ALJ noted that he "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capability." (R. at 263.) The ALJ found that

> plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record.

(R. at 266.) The ALJ cited to visit notes that indicated, while plaintiff had some discomfort, he maintained "full active and passive range of motion." (R. at 267); b) plaintiff chose to continue shoulder injections and delay surgery (id.); and c) plaintiff's lumbar spine complaints were similarly treated with injections, which provided relief. (Id.)

The ALJ noted that at plaintiff's January 25, 2023 appointment with Pain Management, plaintiff reported that the injection in his right shoulder relieved seventy-five percent of plaintiff's pain and he was "very happy with this," until he lifted something heavy and "pain is back full force." (R. at 1248.) However, in a review of symptoms from the same appointment, plaintiff "denies problems with ambulation, problems with dressing, problems with grooming, problems with cleanliness, problems with feeding, problems with housekeeping, [ ], problems

with driving." (R. at 1251.) Physical examination revealed "no acute distress, … normal

mobility, muscle strength 5/5 throughout bilateral upper and lower extremities." (Id.) Dr. Zeliger

cleared plaintiff for light duty with activity limits for "no lifting/carrying, pushing/pulling above

chest level until further notice." (R. at 268.)

> The Third Circuit Court of Appeals noted:

>> While obviously related to the limitation findings, the RFC is a determination
>> of "the most [a claimant] can still do despite [his] limitations" "based on all the
>> relevant evidence in [the] case record." 20 C.F.R. §§ 404.1545(a)(1),
>> 416.945(a)(1); SSR 96-8P, at *2. … [T]he RFC "must be expressed in terms of
>> work-related functions[,]"…. In short, the findings at steps two and three will
>> not necessarily translate to the language used at steps four and five.

>> Additionally, and perhaps more importantly, social security regulations permit,
>> and indeed require, an ALJ to offer "a narrative discussion describing how the
>> evidence supports each" limitation at step four of the disability analysis. Id. at
>> *7. That suggests a wide range of limitation language is permissible, regardless
>> of what the ALJ found at earlier steps of the analysis, so long as the chosen
>> limitation language is explained.

Hess v. Comm'r Soc. Sec., 931 F.3d 198, 209 (3d Cir. 2019). The medical exertional limitations

noted by the state medical examiners were found by the ALJ to be "persuasive" in that they

found the plaintiff to be capable of light exertion. The ALJ ensured the RFC documented

additional limitations on positional restrictions and overhead reaching based on his review of the

record and plaintiff's testimony. (R. at 265.) The ALJ determined based that on plaintiff's full

medical record, plaintiff "has the alleged impairments; however, not to the severity as to

preclude work activity." (R. at 271.) The ALJ found plaintiff capable of light duty with

additional limitations based on his impairments. (R. at 273.)

The ALJ could determine what work-related functions were supported by the record as a

whole. As the ALJ noted, opinions of medical providers that plaintiff would "need to be off

work" are conclusory, and are a function "reserved to the Commissioner." (R. at 271); see 20 C.F.R. § 404.1520b(c)(3)(1).  At a January 10, 2024 pain management appointment held less than two weeks before the (second) hearing with the ALJ, an examination of plaintiff revealed: "Patient appears to be in NO distress due to pain." (R. at 1938) (capitalization in original).

The ALJ did not ignore any evidence submitted by plaintiff and there is substantial evidence to support the ALJ's findings.  See Amaya v. Comm'r of Soc. Sec., No. CV 19-00287, 2020 WL 6336181, at *3 (D.N.J. Oct. 29, 2020) (The ALJ's decision does not require reversal for two key reasons. First, there is no indication that the ALJ ignored any of the evidence relied upon by [plaintiff] .… Second, although the evidence upon which [plaintiff] relies could support a contrary finding, there was substantial evidence to support the finding the ALJ did make); see also Zappala v. Barnhart, 192 F. App'x 174, 177 (3d Cir. 2006) ("[T]he possibility that two inconsistent conclusions may be drawn from the evidence contained in the administrative record does not prevent an agency's finding from being supported by substantial evidence."); Maldonado v. Comm'r of Soc. Sec., 98 F. App'x 132 (3d Cir. 2004).

### 5.    Alleged Error by the ALJ in Not Including All Plaintiff's Functional Limitations in the RFC Presented to the VE in a Hypothetical

Plaintiff contends that the RFC the ALJ presented to the VE in a hypothetical did not sufficiently account for all plaintiff's limitations from his impairments, such as his mental ability for work activities and postural restrictions. (Pl.'s Br.  ECF No. 6 at 18.)  The ALJ, however, in in determining plaintiff's RFC, explained the work-related limitations he found after review of the record and presented hypotheticals to the VE based on those findings.  The limitations raised by plaintiff will each be addressed.

### a.  Mental Limitations

With respect to this alleged error, plaintiff asserts that the evidence submitted after the ALJ's opinion clarifies and expands upon the mental health diagnoses in plaintiff's record.  (Id. at 15.)  As noted above, that new evidence cannot be considered in determining whether substantial evidence supports the ALJ's decision. Matthews, 239 F.3d at 593.  The issue here is whether there is substantial evidence in the record to support the ALJ's decision.

"When mental health is at issue, the functional limitation categories are 'used to rate the severity of mental impairment(s)[.]'" Hess, 931 F.3d at 209 (quoting SSR 96-8P, 1996 WL 374184, at *4 (July 2, 1996)).  According to the social security regulations, an ALJ must discuss how a claimant's limitations impact the disability analysis from the evidence.  "[T]he findings at steps two and three [of the sequential analysis] will not necessarily translate to the language used at steps four and five." Id.

The ALJ, in determining plaintiff's RFC, after review of the record and the medical source opinions, discussed the mental health information in the record, namely that plaintiff had social anxiety immediately following his release from jail and some memory issues which were linked to medications. (R. at 271.)  The ALJ acknowledged plaintiff had moderate limitations from his mental health impairments, which was a higher level of impairment than the state agency mental health consultants recommended in three of the four domains. (Compare R. at 264 to R. at 269.)  Taking plaintiff's mental impairments into consideration, the ALJ limited plaintiff's RFC to "carrying out simple instructions; occasional interaction with supervisors, and the public; and deal with only occasional changes in a routine work setting." (R. at 272.)  There is substantial evidence in the record to support the ALJ's determination.

26

### b. Physical Limitations

With respect to plaintiff's physical limitations, the ALJ likewise considered plaintiff's impairments in the development of plaintiff's RFC. He found plaintiff "would not have the ability to perform work requiring a specific production rate," and would be "limited to occasional reaching overhead with the right extremity." (Id.) Additional postural and environmental limitations were also added beyond the limits of light work. (Id.) The ALJ extensively addressed the reasons why he found each medical professional's opinion not fully persuasive. (R. at 271.) "Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved for the Commissioner." Carolyn A. Kubitschek & Jon C. Dubin, Social Security Disability: Law and Procedure in Federal Court 447 (2025 ed., Thomson Reuters, 2025) (quoting Winn v. Comm'r Soc. Sec. Admin., 894 F.3d 982, 987 (8th Cir. 2018). The ALJ analyzed all the medical evidence available to him at the time of his decision, including medical source notes and plaintiff's testimony.

While plaintiff may view the situation differently, there is substantial evidence to support the RFC developed by the ALJ. The ALJ sufficiently explained the reasons for his conclusions in the development of plaintiff's RFC, which was used in presenting hypothetical scenarios to the VE. As the Appeals Counsel noted, plaintiff's submission of the additional medical records from orthopedics and neurosurgery for periods after the ALJ's decision do not relate to the period of disability for this claim and plaintiff my resubmit them in a subsequent application. (R. at 2.)

## VI.    CONCLUSION

For the reasons discussed above, the court concludes that plaintiff did not meet his burden to demonstrate that the additional evidence submitted after the ALJ's decision was material or that there was good cause for this court to consider remanding the case for that evidence to be further considered.

Considering the record before the ALJ, the ALJ sufficiently explained the limitations he considered in forming plaintiff's RFC, taking into account plaintiff's medical record as a whole and considering the medical source opinions about plaintiff's mental health impairments.  The court finds there is substantial evidence in the record to affirm the ALJ's decision.

The court must decline plaintiff's request to reverse the decision of the Commissioner and award benefits under Sentence Four of the SSA or under Sentence Four of the SSA to remand the case.  Having considered the parties' motions, the record as a whole and the applicable law, the court will deny plaintiff's motion for summary judgment (ECF No. 5).

An appropriate order and judgment will be entered.


Dated: December 4, 2025

BY THE COURT:


/s/ JOY FLOWERS CONTI
Joy Flowers Conti
Senior United States District Judge